23-12527

IN THE

# United States Court of Appeals

## FOR THE ELEVENTH CIRCUIT

◆◆

MARK WEISSMAN, WEATHERLY AVIATION COMPANY INC.,
a Delaware Corporation,

*Plaintiffs-Appellants,*

—v.—

MICHAEL CHEOKAS,

*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA

## BRIEF FOR PLAINTIFFS-APPELLANTS
## [REDACTED]

DONALD R. ANDERSEN
SKINNER LAW GROUP
3340 Peachtree Road, Suite 1800
Atlanta, Georgia 30326
(404) 291-3429

PATRICK S. FLYNN
LAW OFFICE OF PATRICK S. FLYNN
517 West Broad Avenue
Albany, Georgia 31702
(229) 231-2820

*Attorneys for Plaintiffs-Appellants*

## <u>CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT</u>[1]

The undersigned counsel of record for Appellants hereby certifies that the following listed persons and parties have an interest in the outcome of this case or are otherwise disclosed as required pursuant to FRAP 26.1 and 11th Circuit L.R. 26.1-1 through 26.1-4.  These representations are made so the Judges of this Court may evaluate possible disqualification or recusal pursuant to the local rules of this Court.

1.  Michael D. Weissman, Appellant.

2.  Weatherly Aviation Company, Inc. n/k/a Weatherly Aircraft Company, Appellant.

3.  Donald R. Andersen, Counsel for Appellants.

4.  Michael Cheokas, Appellee.

5.  The Honorable W. Louis Sands, Judge, U.S. District Court for the Middle District of Georgia.

6.  Kennedy, John F., Counsel for Appellant.

7.  Banter, James F., Counsel for Appellant.

8.  James, Bates, Brannan, Groover, LLP, Macon, Georgia, Counsel for Appellant.

9.  Skinner Law Group, LLC – Atlanta, Georgia, Counsel for Appellants.

---

[1] Appellants' counsel also has completed the Web-Based CIP with the information contained in this Certificate of Interested Persons and Corporate Disclosure Statement.

Appellant Weatherly Aviation Company, Inc. k/n/a Weatherly Aircraft Company, a Delaware corporation, is not publicly traded. Accordingly, no publicly traded company or corporation has an interest in the outcome of this case or appeal.

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Appellants respectfully request oral argument. Oral argument will substantially aid this Court's decisional process in resolving important issues under Georgia and federal law relating to the interpretation and application of Mediation Agreements under Georgia law, and whether disclosures of mediation communications are permitted under the Georgia Mediation Act, 9 O.C.G.A. § 9-17-1 et seq. or under Fed. R. Evid. 501 or other applicable federal law, all of which would be determinative in this Court's consideration of the District Court's Order enforcing an alleged settlement and requiring Appellants to release all their claims against Appellee/Defendant in this case resulting in a final dismissal of this action in the District Court.

## <u>TABLE OF CONTENTS</u>

PAGE

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT ............................................. C1 of 2

STATEMENT REGARDING ORAL ARGUMENT ........................... i

TABLE OF AUTHORITIES ................................................... vi

STATEMENT REGARDING ADOPTION OF BRIEFS OF OTHER PARTIES ..................................................................... xi

STATEMENT OF SUBJECT MATTER JURISDICTION ................. xii

STATEMENT OF THE ISSUES ............................................. 1

STATEMENT OF THE CASE ................................................ 2

SUMMARY OF THE ARGUMENT ......................................... 10

ARGUMENT AND CITATION OF AUTHORITY .......................... 11

I.    The District Court's Orders Requiring Specific Performance and Enforcement of the Alleged Settlement Agreement By Executing A Release That Would Effectively Terminate *All of Appellants' Claims*, Within Seven (7) Days of the July 25, 2023 Order, is Immediately Appealable Under 28 U.S.C. § 1292(a)(1) ............................................................ 11

    A.  Jurisdictional Statement and Standard of Review .............. 11

1.  Did the District Court err in its interpretation and application of the Mediation Agreement, Georgia law and applicable federal law by permitting disclosure and considering evidence as to the mediation proceedings other than "a written agreement made and executed by the Parties as a result of the mediation," when it considered evidence presented by Defendant's counsel of e-mail communications and other parol evidence prepared *during the mediation*, and thereafter related to the conduct of the mediation, as well as evidence of *events that occurred during the mediation  from the mediator* in support of its Order Denying Plaintiffs' Emergency Motion to Enforce the Confidentiality Provisions of the Mediation Agreement (Doc. 243) ........................ 12

    a)  The Mediation Agreement Is a Binding Contract That Provides The Only Terms Related to the Mediation.................................................... 13

    b)  The Confidentiality Provisions of the Mediation Agreement Are Reasonable and Enforceable to Protect the Parties and the Integrity of the Mediation Process ......................................... 14

    c)  The Terms of the Mediation Agreement Itself Are Enforceable Under Contract Law ........................ 16

    d)  The Disclosure of Any Of The Communications During the Mediation May be Prohibited By The District Court In Accordance with the Mediation Agreement................................................. 17

    e)  Additionally, even if the Mediation Agreement is for any reason insufficient in its clarity to prevent disclosure, the confidentiality of mediation communications also is subject to protection from disclosure under Fed. R. Evid. 501 and other applicable federal law ................... 20

      f)   The Only Evidence Submitted by Appellee and Considered by the District Court Was Privileged Mediation Communications .............................. 25

   B.  If the District Court did not err in its interpretation and application of the Mediation Agreement and Georgia and federal law as set forth above, the District Court nevertheless erred in granting Defendant's Emergency Motion to Enforce Settlement and Seek Sanctions (Doc. 244)................................................................ 26

   C.  Even if the Mediation Agreement was Properly Construed by the District Court, Appellants Concerns Regarding Waiver Were Valid And Appellants Should Be Permitted to Present Evidence, Call Witnesses and Cross-Examine the Mediator, Regarding The Understandings of the Parties and To Present Further Evidence From the Mediation Participants on Remand........ 31

II.  Appellants' Counsel Should Not Be Sanctioned for Seeking Enforcement and Interpretation of the Mediation Agreement and Declining to Present Confidential Evidence That May Have Resulted in Irreparable Prejudice to His Client................ 32

III.  The District Court's Orders Practically and Functionally Terminated All Claims, Except Claims for Attorney's Fees For Sanctions, By Requiring Appellants to Execute A Release of All of Appellants' Claims, Within Seven (7) Days of the July 25, 2023 Order, and Therefore May Be Subject Appellate Review Under 28 U.S.C. § 1291 .......................... 46

   1)  Allowing the Present Amendment Also Should Be Permitted As Plaintiffs' Amended Pleading of the Applicable Law May Affect Further Proceedings If Raised For Any Reason At Trial or On Any Later Appeal ...... 49

   2)  Fed. R. Civ. P. 15(a) Is Liberally Construed in Favor of Allowing Amendments and the Proposed Amendments Are Not Prejudicial to Defendant................................. 49

a) The Proposed Amendment to Specify California and Illinois Law As the Basis for Plaintiffs' Claims Is Not Asserted in Bad Faith or for a Dilatory Motive, But to Correctly Apply the Applicable Choice of Laws under the Georgia Choice of Laws Rules .......................... 50

b) The Amendment to Specify the Applicable Law Is Not Prejudicial and Will Not Result in Undue Delay Because the Amendment Does Not Add Any New Claims and the Substantive Law Sought By Amending the Complaint to Expressly Base Plaintiffs' Fraud Claims and Civil Conspiracy Claim on California and Illinois Law is the Same As Georgia Law ................... 51

CONCLUSION ................................................................ 52

CERTIFICATE OF COMPLIANCE ........................................... 53

CERTIFICATE OF SERVICE ................................................. 54

## <u>TABLE OF AUTHORITIES</u>

PAGE(S)

**Cases**

*ACQIS, LLC v. EMC Corp.*,
   2017 U.S. Dist. LEXIS 100856 (D. Mass. 2017) ........................ 22

*Adkins v. Morgan County*,
   2018 U.S. Dist. LEXIS 240498 (E.D. Tenn. 2018) ...................... 22

*Amlong & Amlong, P.A. v. Dennys, Inc.*,
   500 F.3d 1230 (11th Cir. 2007) .......................................... 44

*In re Anonymous*,
   283 F.3d 627 (4th Cir. 2002) ............................................. 22

*Apple, Inc. v. Samsung Elecs. Co.*,
   2014 U.S. Dist. LEXIS 2727 (N.D. Cal. 2014) .......................... 23

*Barnes v. Dalton*,
   158 F.3d 1212 (11th Cir. 1998) .......................................... 41

*Bennett v. Novas*,
   364 Ga.App. 364, 874 S.E.2d 871 (2022) ............................... 29

*Brown v. Life Univ., Inc.*,
   2023 U.S.Dist. LEXIS 215286 (N.D. Ga. 2023) .................... 42, 43

*Burger King Corp. v. Weaver*,
   169 F.3d 1310 (11th Cir. 1999) .......................................... 50

*Byrne v. Nezhat*,
   261 F.3d 1075 (11th Cir. 2001) .......................................... 42

*Calka v. Kucker Kraus & Bruh*,
   167 F.3d144 (2d Cir. 1999) .............................................. 25

*Cox Broad. Corp. v. Nat'l Coll. Athletic Ass'n*,
   250 Ga. 391, 297 S.E.2d 733 (1982) ........................... 27, 28, 32

*Diaz v. Marblehead Corp.*,
   643 Fed. Appx 916 (11th Cir. 2016) .................................... 45

*Folb v. Motion Picture Industry Pension & Health Plans*,
    16 F.Supp.2d 1164 (C.D. Cal. 1998,
    *aff'd* 216 F.3d 1082 (9th Cir.) ............................................... 21

*Ford v. Citizens & S. Nat. Bank, Cartersville*,
    928 F.2d 1118 (11th Cir. 1991)............................................... 11

*Forman v. Davis*,
    371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962) ...................... 49

*Frankenmuth Mut. Ins. Co. v. Escambia County*,
    289 F.3d 723 (11th Cir. 2002) ............................................... 12

*Hancock v. Hobbs*,
    967 F.2d 462 (11th Cir. 1992) ............................................... 20

*Hand v. Walnut Valley Sailing Club*,
    2011 U.S.Dist. LEXIS 80465 (D. Kans. 2011) ........................... 23

*Hays v. Equitex, Inc. (In re RDM Sports Group, Inc.)*,
    277 B.R. 415, 2002 Bankr. LEXIS 468 (N.D. Ga. Bankr. 2002)........ 21

*Jaffee v. Redmond*,
    518 U.S. 1, 135 L.Ed.2d 337, 116 S.Ct 1923 (1996) .................... 21

*Kaplan v. DaimlerChrysler, A.G.*,
    331 F.3d 1251 (11th Cir. 2003)............................................... 5

*Lake Utopia Paper Ltd. v. Connelly Containers, Inc.*,
    608 F.2d 928 (2d Cir. 1979) ................................................. 25

*Mackenzie v. City of Rockledge*,
    920 F.2d 1554 (11th Cir. 1991) ............................................. 43

*Macort v. Prem., Inc.*,
    208 Fed. Appx. 781 (11th Cir. 2006) ...................................... 43

*Malautea v. Suzuki Motor Co., Ltd.*,
    987 F.2d 1536 (11th Cir. 1993)............................................. 45

*Martinez v. Carnival Corp.*,
    744 F.3d 1240 (11th Cir. 2014).............................................. 46

*McMahan v. Toto*,
    256 F.3d 1120 (11th Cir. 2001),
    amend on reh'g, 311 F.3d 1077 (11th Cir. 2002) ........................ 44

*Mickles v. Country Club, Inc.*,
   887 F.3d 1270 (11th Cir. 2018).............................................48

*Nemesis Veritas, L.P. v. Toto*,
   156 L.Ed.2d 129, 123 S.Ct. 2273 (2003)..................................44

*Norelus v. Denny's Inc.*,
   628 F.3d 1270 (11th Cir. 2010)...........................................44

*OMNI Builders Risk, Inc. v. Bennett*,
   313 Ga. App. 356, 721 S.E.2d 563 (2011) ...............................15

*Patel v. McCall*,
   200 Fed. Appx. 841 (11th Cir. 2006) ....................................45

*Peterson v. BMI Refractories*,
   124 F.3d 1386 (11th Cir. 1997)...........................................44

*Petrello v. White*,
   533 F.3d 110 (2d Cir. 2008) ..............................................11

*United States ex rel. Raven v. Ga. Cancer Specialists I*,
   2020 U.S. Dist. LEXIS 143380,
   2020 WL 548744 (N.D. Ga. 2000).......................................21

*RegScan v. Bureau of National Affairs*,
   2012 U.S. Dist. LEXIS 101273,
   2012 WL 2994075 (E.D.Va. 2012) .................................. 31, 36

*Sampson v. Sch. Dist.*,
   262 F.R.D. 469 (E.D. Pa. 2008)...........................................22

*Savage & Assocs., P.C. v. K&L Gates LLP (In re Telligent, Inc.)*,
   640 F.3d 53 (2d Cir. 2011)..................................... 22, 24, 25

*Schiavo v. Schiavo*,
   403 F.3d 1223 (11th Cir. 2005) ..........................................36

*Schwartz v. Million Air, Inc.*,
   341 F.3d 1220 (11th Cir. 2003)................................. 40, 43, 45

*In re Secretary of Florida Department of Corrections*,
   2020 U.S. App. LEXIS 9894 (11th Cir. 2020) .........................36

*Sheldone v. Pennsylvania Turnpike Comm'n*,
   104 F.Supp. 2d 511 (W.D. Pa. 2000) ...................................21

*Supreme Fuels Trading FZE v. Sargent*,
689 F.3d 1244 (11th Cir. 2012) ............................................. 11

*Taylor Morrison Servs v. HDI-Gerling Am. Ins. Co.*,
293 Ga. 456, 746 S.E.2d 587 (2013) .................................. 49, 50

*Thomas v. Tenneco Packaging Co.*,
293 F.3d 1306 (11th Cir. 2002) ........................................ 41, 45

*Williams v. L.A. Sheriff's Dep't*,
2020 LEXIS 250107 (C.D. Cal. 2020) ................................... 22

*Young Apts., Inc. v. Town of Jupiter*,
503 Fed. Appx. 711 (11th Cir. 2013) .................................... 34

**Statutes**

18 U.S.C. §1030(a)(4) ("Computer Fraud and Abuse Act") ................. 20

18 U.S.C. § 1962I ......................................................... 20

18 U.S.C. § 1964I ......................................................... 20

28 U.S.C. §§ 652(d)
("Alternative Dispute Resolution Act") ................................... 23

28 U.S.C. § 1291 ..................................................... *passim*

28 U.S.C. § 1292(a)(1) ................................................... 11

28 U.S.C. § 1921(a)(1) ................................................... 11

28 U.S.C. § 1927 ..................................................... *passim*

9 O.C.G.A. § 9-17-1 *et seq*. ("Georgia Mediation Act") ............ 10, 12, 16

O.C.G.A. § 9-17-3 .................................................... 16, 19

O.C.G.A. § 9-17-5 ........................................................ 9

O.C.G.A. § 9-17-5(a)(1) .................................................. 19

O.C.G.A. § 9-17-6(a) ..................................................... 1

O.C.G.A. § 9-17-7 ........................................................ 1

O.C.G.A. § 9-17-6 ........................................................ 9

O.C.G.A. § 13-6-11 ...................................................... 51

**Rules**

Fed. R. Civ. P. 15(a) ........................................................ 49

Fed. R. Civ. P. 15(a)(2) .................................................... 49

Fed. R. Evid. 501 ..................................................... *passim*

**Other Authorities**

https://gcr.onegovcloud.com/public/directory/#!/ ............................ 20

Georgia Office of Dispute Resolution Memorandum,
     dated October 26, 2 available at https://godr.org/wp-
     content/uploads/sites/5/2022/11/GODR-Advisory-Memo-2022.pdf .... 19

## **STATEMENT REGARDING ADOPTION OF BRIEFS**
## **OF OTHER PARTIES**

Appellants/Plaintiffs have not adopted the briefs of any other parties.

## STATEMENT OF SUBJECT MATTER JURISDICTION

Appellants have addressed this Court's subject matter jurisdiction in their Response to this Court's Jurisdictional Questions (Eleventh Cir. Doc. 13), and respectfully incorporate that response herein in accordance with this Court's Order (Eleventh Cir. Doc. 22) carrying forward those issues with the appeal. As set forth therein and in the Notice of Appeal (Dist. Ct. Doc. 250), this appeal is from the District Court's Order Granting Appellee/Defendant Cheokas's Emergency Motion to Enforce Settlement and Seek Sanctions (Doc. 244), and Related Orders including but not limited to Order Denying Plaintiffs' Emergency Motion to Enforce Confidentiality of Mediation Agreement (Doc. 243), and from all previous rulings in the case and the subject matter jurisdiction of this Court is established under 28 U.S.C. §§ 1291, 1292(a)(1) and the collateral order doctrine.

.

## STATEMENT OF THE ISSUES

(1)    Where Mediation Agreement provides all mediation communications and proceedings are confidential except "written agreement made and executed by the parties as a result of the mediation" ***and there is no such agreement***, whether, over Appellants/Plaintiffs' objection and without Appellants/Plaintiffs' presentation of any confidential communications, did the District Court properly consider Appellee/Defendant's presentation of confidential mediation emails and testimony as to confidential mediation communications in its Orders (Doc. 243 and 244), to find that a settlement had occurred and to require Appellants/Plaintiffs to execute a release of all claims against Appellee/Defendant by a date certain.

(2)    Did the District Court abuse its discretion in its Order (Doc. 244) entering sanctions against Appellants/Plaintiffs' counsel under 28 U.S.C. § 1927 and the District Court's inherent powers without a hearing, for Appellant/Defendants' decision not to present evidence in the form of confidential mediation communications in order to avoid waiver of confidentiality and privilege in response to Defendant/Appellee's Motion to Enforce Settlement and Seek Sanctions (Doc. 216).

(3)    Did the District Court abuse its discretion in its Order (Doc. 221) denying Appellants/Plaintiffs' Motion for Leave to File Second Amended Complaint

(Doc. 198) and Motion for Leave to File Second Amended Complaint and Corrected Complaint (Doc. 203).

## STATEMENT OF THE CASE

While this is the third action arising from the circumstances giving rise to the claims in this case, it not, as the District Court in multiple Orders implies, the "third iteration of [Plaintiffs/Appellants claims against Appellee/Defendant in] this case." The first action[2] actually was filed ***against Appellant/Plaintiff Mark Weissman*** by third parties claiming ownership of all of the assets of an aircraft manufacturing company, Weatherly Aircraft Company,  a California corporation, seeking a declaration that he was not the owner of the property which had been located in a building owned by Appellee/Defendant in Americus, Georgia. Appellee/Defendant was not a party to that action. It was only after discovery in that case revealed that the property had been fraudulently sold at a purported "self-storage warehouse sale" by Appellee/Defendant to those third parties' predecessor in interest, resulting in a Consent Judgement that Appellant/Plaintiff Weissman  was the owner of the property, that Appellant/Plaintiff Weissman was able to proceed with his counterclaims against the Plaintiffs in that case for damages and settle those damage claims against those parties. During the course of deposition discovery and forensic computer analysis in that case, the genesis of the fraud was found to be a fraudulently

---

[2] *NAFTAA v. Weissman*, Civil Action No. 1:10-CV-037 (WLS) (the "first action").

fabricated "self-storage warehouse sale" of the assets by Defendant/Appellant Michael Cheokas. Upon learning of that fraud, Appellants/Plaintiffs in this action, promptly sought to add Michael Cheokas as a defendant. However, ***the District Court <u>denied</u> a motion to add Defendant Michael Cheokas as a defendant to that initial action (the "first action")***. Thereafter, the first action was settled against the third parties who had brought that action and damage claims against those third parties who were plaintiffs in that case also were settled on a partial basis. A second precautionary action ("the Williams case") was filed against the purported purchaser of the assets and co-conspirator in the fraudulent self-storage warehouse sale – one Franklin "Frankie" Williams – and as well as other co-conspirators who were not plaintiffs in the original action, including Appellee/Defendant Cheokas,[3] but Appellee/Defendant and the other co-conspirators were dismissed without prejudice from that action, and the case against Frankie Williams and his company Souther Field Aviation, Inc. proceeded.  This case was then filed against Defendant Michael Cheokas alone ("the present action" or the "Cheokas action"), and a motion to consolidate this case with the pending *Williams* case was  denied by the District Court.  After Williams untimely death, any claims against his estate were promptly settled and dismissed, ***leaving this – a third action arising from these facts*** – as ***the***

---

[3] *Weissman v. Williams*, Civil Action No. 1:15-CV-040 (WLS) ("the second action").

***first and only case <u>prosecuted</u> against Defendant Michael Cheokas*** by Plaintiff Mark Weissman and the current Weatherly Aviation Company, a Delaware corporation, formed by Appellant/Plaintiff Weissman and now known as Weatherly Aircraft Company,[4] seeking further previously uncompensated damages resulting from the fraud initiated and perpetrated by Defendant Michael Cheokas. After more than five years of litigation, including multiple dispositive motions, the present case was finally specially set for jury trial the week of July 10, 2023.

The District Court has assiduously avoided involving itself in settlement negotiations and did not order, direct or recommend that the parties engage in mediation. Nevertheless, the parties voluntarily agreed to mediate the remaining claims prior to trial, which occurred on Monday, June 12, 2023, with Mark Dehler, Esq., a Georgia registered neutral as mediator.

Present at the mediation were Plaintiffs Mark Weissman, appearing individually and as President of Weatherly Aircraft Company, Donald R. Andersen, Esq. and Charles E. Peeler, Esq., as counsel for Appellants/Plaintiffs, and Appellee/Defendant Michael Cheokas, and his counsel John F. Kennedy, Esq., James E. Banter, Esq., and a person identified as a summer associate in their firm. Prior to commencement of the mediation, the parties present all were required to execute a Mediation Agreement (Doc. 225-1) which was prepared by Mr. Dehler.

---

[4] *Weissman v. Cheokas*, Civil Action No. 1:17-220 (WLS) ('this third action').

The Mediation Agreement includes the following pertinent provisions:

> In order for the mediation to be successful, open and honest communications are essential.
>
> ***
>
> In order to maintain confidentiality, all communications of the parties in this mediation shall be treated as strictly confidential by the mediator, the parties, and their counsel.
>
> ***
>
> The parties and their representatives agree not to call the Mediator as a witness at any proceeding, nor to subpoena or otherwise seek discovery of any written materials related to this mediation other than a copy of this agreement or any written settlement agreement resulting from this mediation, whether or not the law permits such discovery from the mediator.
>
> ***
>
> **The exception to the confidentiality rules** stated above, are that this *Mediation Agreement* and **any written agreement made and executed by the parties as a result of the mediation** may be used in any relevant proceeding, unless the parties, by written agreement decide otherwise. Additionally, the Mediator is authorized to file any reports required by any court or judicial administrative body
>
> ***
>
> . . . The parties are advised that a mediated agreement, once signed by them, can have a significant effect upon the rights of the parties going forward and the status of the litigation referenced above.
>
> ***
>
> We have read, understand, and agree to be bound by each of the provisions of this Mediation Agreement this 12th day of June 2023.

(Mediation Agreement, Doc. 225-1)(italicized .emphasis in original, bold underlined emphasis added).

Following a nine-hour mediation, no written agreement was made and executed by the parties as a result of the mediation. Nevertheless, the next day, counsel for Appellants/Plaintiffs sent a proposed joint email to counsel for Appellee/Defendant to report to the Court following the mediation, but received no

5

response. Accordingly, at 4:57 pm prior to the close of business on June 13, 2023, counsel for Appellants/Plaintiffs, having received no response from counsel for Appellee/Defendant, revised the email to make it a separate communication to the Court's Deputy Clerk stating that Appellants/Defendants ███████████████

███████████████████████████████████████

██████████████████████████ (Doc 216-5)(emphasis added). Shortly after sending the email, counsel for Appellants/Defendants received a call from counsel for Appellee/Defendant, which Appellee/Defendant's counsel has characterized as ███████████████████████

███████████████████████████████████████

███████████████████████████████████████

(Doc. 216-1, page 5, ¶ 18) At that time, the undersigned did not know that they had not seen the email that had been sent to the Court as a separate email. As a result of these developments, counsel for Appellants/Plaintiffs immediately reported the substance of this call to the mediator and to his client and co-counsel that evening and the next morning, and thereafter sent an email at 1:48 pm the next day, June 14, 2023, to counsel for Appellee/Defendant responding to the subject matter of the telephone call after the close of business on the previous day. That email was marked "MEDIATION AND SETTLEMENT PRIVILEGED." (Doc. 216-7).

Appellants/Plaintiffs have not disclosed that email because the communication was a privileged and confidential mediation communication and, as has been explained consistently to the District Court, to disclose the substance of such communications would risk waiver of the confidentiality and privilege. Following additional communications between the parties, the undersigned advised the District Court on Thursday, June 15, 2023 that Appellant/Plaintiffs for reasons they could not disclose due to the confidentiality provisions of the Mediation Agreement, ███████

████████████████████████████████████████████

██████████████ (Doc. 216-9). The District Court entered an Order on Friday, June 16, 2023 requiring the parties to file a report in writing as to the finality of any settlement reached. (Doc. 210). A joint report was filed on Tuesday, June 20, 2023, in which Appellants/Plaintiffs advised the Court that there was no meeting of the minds at the mediation and therefore no settlement, and Appellee/Defendant advised the Court that Cheokas contended that there was a settlement and that "Cheokas will be filing a motion to enforce the settlement agreement." (Doc. 213 at 2.) Because of their concern for the confidentiality of the mediation proceedings, Appellants/Plaintiffs filed the next day, June 21, 2023, their Emergency Motion to Enforce the Confidentiality Provisions of the Mediation Agreement (Doc. 215), and thereafter filed additional motions seeking to preserve the confidentiality of the proceedings and to prevent breach of the Mediation

Agreement by Defendant/Appellee's disclosure of mediation communications and subpoena to the mediator. (Doc. Nos. 218, 225 – 227). Defendant/Appellant filed his Emergency Motion to Enforce Settlement Agreement and Seek Sanctions ("Motion to Enforce Settlement Agreement")(Doc. 216) on June 22, 2023, attaching an affidavit of Defendant/Appellee's counsel John Kennedy, Esq. disclosing confidential mediation communications and attaching selected e-mails related to the disputed settlement, including both emails between counsel during the mediation and thereafter related to the mediation (Doc. 216-2 through 216-12).[5]

The Court held a hearing on June 30, 2023 on the pending motions. The District Court concluded at the hearing that the Mediation Agreement and Georgia law permitted disclosure of Defendant/Appellee's evidence and the testimony of the mediator. The District Court subsequently entered a written Order on July 7, 2023 memorializing its ruling from the June 30, 2023 hearing (Doc. 228). Ultimately, the District Court entered a further written Order on July 25, 2023, further memorializing its ruling stating, despite the express language of the Mediation

---

[5] Appellee/Defendant's counsel affidavit (Doc. 216-1) refers to communications ***during the mediation*** and Doc. 216-2 and 216-3 are emails ***exchanged between counsel during  and at the June 12 mediation***. The remaining emails include correspondence ***between counsel and the mediator following the June 12 mediation as well as correspondence to the Court***. The emails do not include all of the emails from the undersigned to Appellee/Defendant's counsel, and Appellants/Plaintiffs counsel has not submitted them in order to avoid waiving the confidentiality and privilege related to the communications.

Agreement requiring a "written agreement made and executed by the parties," that the Court's contract interpretation was that "the phrase 'any written agreement' is not limited to just a formal, written, and signed Agreement, but also includes any written agreement that the parties did not choose or decide to exclude[,]" (Doc. 243, page 10). The District Court also referenced the Georgia Uniform Mediation Act, O.C.G.A. §§ 9-17-5 and 9-17-6, as grounds for its decision. *Id.* at pages 11 and 12.

On July 25, 2023, the District Court also entered its Order Granting Cheokas's Emergency Motion to Enforce Settlement and Seek Sanctions (Doc. 244). The Order required the parties to "***immediately confer, prepare the appropriate releases*** consistent with the Parties settlement Agreement and this Order, ***execute it***, and ***provide notice of the same to*** the Court **no later than seven (7) days** *from the date of this Order*." *Id.* at 23 (bold emphasis in original and italicized bold emphasis added). Thereafter, ***without any further action of the Court***, the Order directed the Clerk to "release Defendant Cheokas's [settlement check], payable to Plaintiffs Weissman and Weatherly Aircraft Company to Plaintiffs' Counsel, **within seven (7) days** of notice of execution of the settlement agreement." *Id.* at 23 (bold emphasis in original and italicized bold emphasis added). The foregoing deadline for execution of a release was August 1, 2023, but following the filing of the Notice of Appeal to this Court on August 1, 2023 (Doc. 245), the District Court granted Plaintiffs' Motion to Stay Pending Appeal of Order Granting Cheokas's Emergency Motion to

Enforce Settlement and Seek Sanctions (Doc. 244) and Related Orders (Doc. 253), which also was filed August 1, 2023, and entered a stay of the deadlines in this Order (Doc. 244), pending the outcome of this appeal.

## SUMMARY OF THE ARGUMENT

The District Court erred in failing to enforce the confidentiality provisions of the Mediation Agreement and otherwise enforcing the mediation confidentiality requirements of the Georgia Mediation Act, 9 O.C.G.A. § 9-17-1 *et seq.*, and federal law including Fed. R. Evid. 501 and other applicable federal statutes. The District Court erred in considering confidential mediation communications to conclude that a settlement agreement existed and that Appellee/Defendant's Motion to Enforce Settlement should be granted. Even if this Court concludes that the District Court did not commit error in its interpretation and application of the Mediation Agreement, Georgia law and federal law, or in granting Appellee/Defendant's Motion to Enforce Settlement, the District Court abused its discretion in granting sanctions against Appellant/Plaintiffs' counsel based on 28 U.S.C. § 1927 and the Court's inherent powers without notice or a hearing and without a proper finding that counsel objectively acted in bad faith and unreasonably and vexatiously expanded the proceedings. Finally, the District Court also abused its discretion in denying Appellants/Plaintiffs' Motion for Leave to File Second Amended Complaint and to Correct Second Amended Complaint to specify applicable law to

the remaining fraud claims in the case and to correct prayer to include otherwise pled

punitive damages claims.

## ARGUMENT AND CITATION OF AUTHORITY

I.  **The District Court's Orders Requiring Specific Performance and Enforcement of the Alleged Settlement Agreement By Executing A Release That Would Effectively Terminate *All of Appellants' Claims*, Within Seven (7) Days of the July 25, 2023 Order, is Immediately Appealable Under 28 U.S.C. § 1292(a)(1).**

### A.  Jurisdictional Statement and Standard of Review

Appellants' appeal of the foregoing requirement ***to execute a release terminating all of their claims against Appellee/Defendant*** is based on 28 U.S.C. § 1292(a)(1). An order specifically enforcing a settlement agreement ***by a specific date*** is an affirmative or mandatory injunction requiring a party to act ***by a specific date*** and therefore is appealable under 28 U.S.C. § 1921(a)(1). *Petrello v. White*, 533 F.3d 110 (2d Cir. 2008), cited with approval in the concurring opinion in *Supreme Fuels Trading FZE v. Sargent*, 689 F.3d 1244, 1246 (11th Cir. 2012) ("[Eleventh Circuit] may have jurisdiction to review [order to enforce settlement agreement by a date certain], even if it is not a final judgment. 28 U.S.C. 1291").

As recognized by the Eleventh Circuit, in federal court, a motion to enforce a settlement is essentially an equitable action seeking specific performance of the contract. *Ford v. Citizens & S. Nat. Bank, Cartersville*, 928 F.2d 1118, 1122 (11th Cir. 1991). A mandatory injunction specifically enforcing a settlement requires

interpretation of a contract. The interpretation of a contract involving traditional contract principles is a question of law subject to *de novo* review. *Frankenmuth Mut. Ins. Co. v. Escambia County*, 289 F.3d 723, 727 (11th Cir. 2002). Additionally, to the extent that the District Court also relied upon application of the Georgia Uniform Mediation Act, those issues of statutory application and interpretation are also subject to *de novo* review.

In this case, there are two legal issues arising from the first and second July 25, 2023 Orders (Doc. 223 and 224) to be considered by this Court:

> 1. **Did the District Court err in its interpretation and application of the Mediation Agreement, Georgia law and applicable federal law by permitting disclosure and considering evidence as to the mediation proceedings other than "a written agreement made and executed by the Parties as a result of the mediation," when it considered evidence presented by Defendant's counsel of e-mail communications and other parol evidence prepared _during the mediation_, and thereafter related to the conduct of the mediation, as well as evidence of _events that occurred during the mediation from the mediator_ in support of its Order Denying Plaintiffs' Emergency Motion to Enforce the Confidentiality Provisions of the Mediation Agreement (Doc. 243).**

There is a serious legal question as to whether the District Court should have enforced the confidentiality provisions of the Mediation Agreement (Doc. 215-1) and refused to allow disclosure or to consider any evidence from or related to the mediation other than "a written agreement made and executed by the Parties as a result of the mediation."

### *a)    The Mediation Agreement Is a Binding Contract That Provides The Only Terms Related to the Mediation.*

The mediation in this case was a purely private contract between the parties and was not ordered by the Court or conducted under any court directed or court related mediation program. As such, the parties are permitted to specify the terms governing the mediation. In this case, the parties were required to sign the Mediation Agreement prior to the commencement of the mediation. The Mediation Agreement includes the signatures of all present at the mediation, including not only the attorneys but each of their clients as well. Under the Mediation Agreement, the parties specified "strict confidentiality, subject only to disclosure of the attached Mediation Agreement," and any "written agreement made and executed by the parties as a result of the mediation.. . ." (Doc. 215-1). Similarly, the District Court did not order mediation in this case and thus this mediation was not subject to any required reports to the Court. If, as a result of the mediation, there had been "a written agreement made and executed by the parties as a result of the mediation," then under the terms of the Mediation Agreement, either party would have been entitled to disclose that document to the Court and, if necessary, enforce the terms just as any other contract. Otherwise, the mediation process should have had no bearing on any of the issues then pending before the District Court.

> ### *b) The Confidentiality Provisions of the Mediation Agreement Are Reasonable and Enforceable to Protect the Parties and the Integrity of the Mediation Process*

The Mediation Agreement is reasonable and enforceable because it is capable of resulting in a binding settlement. First, the Mediation Agreement emphasizes that the mediation is a purely voluntary proceeding. The parties are free to agree or to disagree during the course of the mediation. They are likewise entitled to make offers, reject offers or not make offers at all. They may leave the mediation at any time without penalty. As such, all of the actions of the parties in the mediation are purely voluntary and are governed solely by their self-interest in attempting to use mediation as a means of attempting to reach a resolution of their dispute, including the dispute that is the subject of this action.

Second, in keeping with the voluntary nature of the mediation, the Mediation Agreement establishes the manner in which the mediation is to be resolved. The result of the mediation was definitely not to be established by requiring the parties to resort to their confidential communications during the mediation, but the sole basis for achieving a result in the mediation is the creation of a document – "a written agreement made and executed by the parties." The Mediation Agreement defined the parties as all those persons who had signed the Mediation Agreement, which included not only counsel, but also the parties to the litigation, namely, Dr. Weissman in his individual capacity as a plaintiff and his corporate capacity as the

14

President of Weatherly Aircraft Company, and also Mr. Cheokas, in his individual capacity.  Under the terms of the Mediation Agreement, prior to signing any proposed "written agreement made . . . as a result of the mediation," either party is free to decline to do so. *See OMNI Builders Risk, Inc. v. Bennett*, 313 Ga. App. 356, 721 S.E.2d 563 (2011)(Despite "preliminary agreement" during mediation to settle EEOC claim for an agreed amount, one of the principals refused to sign the written agreement even though his attorney had signed it, and Court of Appeals held that where there was a signature line for the principal, the signature of the attorney did not bind the principal and there was no agreement). There is nothing compulsory or binding about any aspect of the mediation under the terms of the Mediation Agreement, unless and until there is a "written agreement made and executed by the parties as a result of the mediation."

The result of the mediation, once established by the "written agreement made and executed by the parties as a result of the mediation," then is wholly enforceable in accordance with the provisions of contract law. If the written agreement is sufficiently clear, then a Court may enforce the provisions of the contract. Likewise, if for some reason, the agreement, even as written, is ambiguous or otherwise not susceptible of enforcement, the Court should decline to enforce the contract without resort to confidential communications. These rules of contract interpretation and

15

enforceability apply to the "written agreement made and executed by the parties as a result of the mediation," just as in the case of any other contract.

### c) The Terms of the Mediation Agreement Itself Are Enforceable Under Contract Law

As shown by the Mediation Agreement, it was entered into by all of the parties to this action, their counsel and the Mediator and therefore is enforceable according to its terms. O.C.G.A. § 9 O.C.G.A. § 9-17-1 *et seq.* Under the terms of the Mediation Agreement, ***disclosure of any mediation communications other than as set forth above***, is not authorized. These provisions of the Mediation Agreement, just as any other contract are enforceable by law, including specific performance. [6] The parties are entitled to enforce the terms of their Mediation Agreement, without any showing of any other reasons because that confidentiality is an essential term that was required to promote full and candid mediation communications. As set forth above, according to the terms of the parties' Mediation Agreement, if the mediation resulted in a "written agreement made and executed by the Parties," that could be disclosed and enforced. However, in this case there is no such "written agreement made and executed by the parties as a result of the mediation."

---

[6] Pursuant to O.C.G.A. § 9-17-3, ". . . a mediation party ***may prevent*** any other person ***from disclosing*** a mediation communication; . . ." (emphasis added).

> **d)** ***The Disclosure of Any Of The Communications During the Mediation May be Prohibited By The District Court In Accordance with the Mediation Agreement***

No matter how limited, the disclosure of ***any*** of the communications by any of the Parties or the Mediator as a result of the mediation is not authorized – even attempts to summarize or describe the mediation process, attempts to imply that certain communications were or were not made or even communications regarding prospective agreements– necessarily opens the door to requiring one party or the other to resort to other communications during the mediation process to fully address those summaries, descriptions, implications or prospective agreements. For example, what did counsel understand? What did the parties understand? What did each party communicate to the mediator, and whether and how was that offer or counter-offer communicated by the mediator to each party in their separate caucuses, that ultimately led to the parties each having different, or, at least, distinct understandings of the potential terms? What was said in the subsequent conversations between the parties regarding their understandings at the mediation, what was then communicated to the mediator about the misunderstanding, what did counsel communicate to each of the parties regarding the misunderstanding? There are answers to all of these questions, but these questions could only be answered through a disclosure of mediation communications. Appellee/Defendant's counsel chose to improperly present to the District Court one sided, self-serving and selective answers

to some of these questions including references to the mediation communications, thereby violating the Mediation Agreement by such disclosures and by subpoenaing the mediator and requiring his testimony. On the other hand, Appellants/Plaintiffs chose to adhere to the confidentiality provisions of the Mediation Agreement even to the extent of not providing counter affidavits, not producing additional email communications not disclosed and produced by Appellee/Defendant, not cross-examining Appellee/Defendants affiant Mr. Kennedy as to the affidavit, not cross-examining Mr. Cheokas himself or others present at the mediation as to their understanding, and not cross-examining the mediator as to his testimony at the hearing. This was not done because the Mediation Agreement and its provisions expressly state that the process was conducted in "strict" confidence, and because that Agreement should be strictly enforced in accordance with both the contract and Georgia law.

Under the Georgia Supreme Court Alternative Dispute Resolution Rules, Sections II and VII, the strict construction of the confidentiality requirements of mediation under Georgia law **and the absolute requirement for a written agreement executed by the parties** to evidence a mediated agreement are of paramount importance. This is highlighted by the position recently taken by the Georgia Office of Dispute Resolution during the COVID emergency, that, despite the emergency, "the ***recording*** of agreements reached by parties during virtual

mediations is not an approved practice and is **strictly prohibited** by the Rules." Georgia Office of Dispute Resolution Memorandum addressed to all "Registered Neutrals with the Georgia Office of Dispute Resolution," dated October 26, 2022, page 1, at https://godr.org/wp-content/uploads/sites/5/2022/11/GODR-Advisory-Memo-2022.pdf (emphasis added). Based upon an analysis of both the Georgia Supreme Court Alternative Dispute Resolution Rules, Appendix C, Chapter 1.A., Section II, Confidentiality, and Section VII, Confidentiality and Immunity, as well as the relevant provisions of the Georgia Uniform Mediation Act, O.C.G.A. §§9-17-3, 5(a)(1), 6(a), and 7, the Georgia Office of Dispute Resolution guidance **directed to all Registered Neutrals in Georgia**[7] concluded that **"[w]ithout a signed written agreement, there is no admissible record of any agreement reached at mediation."** *Id.* at 4 (emphasis added). While the subject of the foregoing memorandum referred to "recordings" of "settlement agreements," it recognized and based its conclusions regarding that prohibition on the fundamental rule that **the only exception from the strict confidentiality for mediation communications is a "signed written agreement,"** which in this case the parties to the Mediation expressly defined in this Mediation Agreement **as a "written agreement made and executed by the parties."**

---

[7]  Mark Dehler, Esq.. ODR certification number 4960-3937-7659-4944, is a Georgia registered neutral and is bound by these Rules. https://gcr.onegovcloud.com/public/directory/#!/

The potential disclosure of confidential information is generally recognized under law as a basis for an order prohibiting such disclosures in advance of the disclosure. Otherwise, the disclosure, once made, even to the Court because the Court is involved in adjudicating any issues arising from the mediation, ***will result in irreparable injury to the Party seeking to maintain the confidentiality of the proceedings*** under the terms of their voluntary, contractual Mediation Agreement. As such, an order is necessary to prevent irreparable injury and there is no adequate remedy at law for such an unauthorized disclosure of confidential information.

> ***e)***      ***Additionally, even if the Mediation Agreement is for any reason insufficient in its clarity to prevent disclosure, the confidentiality of mediation communications also is subject to protection from disclosure under Fed. R. Evid. 501 and other applicable federal law.***

While the only remaining claims following the District Court's multiple orders dismissing or granting summary judgment as to the original federal and state law claims, were state law claims (and diversity jurisdiction also existed), the dismissal or summary judgment as to the original counts, including those federal claims under Civil RICO (18 U.S.C. §§ 1962I, 1964I) (D.E. 1, at 44) and Computer Fraud and Abuse Act, 18 U.S.C. §1030(a)(4) (D.E. 1, at 76), had not yet been reviewed by this Court. As such, the determination of applicable privileges under Fed. R. Evid. 501 applies in this case. *Hancock v. Hobbs,* 967 F.2d 462 (11th Cir. 1992).

While this Court has not yet considered the existence of a federal mediation privilege under Fed. R. Evid. 501, the existence of such a privilege has been recognized in a thorough and well-reasoned opinion by Judge Drake in the U.S. Bankruptcy Court for the Northern District of Georgia. *Hays v. Equitex, Inc. (In re RDM Sports Group, Inc.)*, 277 B.R. 415, 2002 Bankr. LEXIS 468 (N.D. Ga. Bankr. 2002). In recognizing a mediation privilege under Fed.R.Evid. 501, Judge Drake analyzed the requirements for recognizing federal privileges both under Fed. R. Evid. 501, as established by the leading U.S. Supreme Court decision in *Jaffee v. Redmond*, 518 U.S. 1, 135 L.Ed.2d 337, 116 S.Ct 1923 (1996), and other federal cases specifically recognizing a federal mediation privilege under Fed. R. Evid. 501, including *Folb v. Motion Picture Industry Pension & Health Plans*, 16 F.Supp.2d 1164 (C.D. Cal. 1998), *aff'd* 216 F.3d 1082 (9th Cir.), and *Sheldone v. Pennsylvania Turnpike Comm'n*, 104 F.Supp. 2d 511 (W.D. Pa. 2000). While a federal mediation privilege was not adopted by Judge Pannell in the Northern District of Georgia involving a JAMS mediation and the JAMS mediation agreement protecting "offers, promises, conduct and statements" because other grounds provided the rule for decision, Judge Drake's analysis in *Hays* adopting a mediation privilege under Fed.R. Evid. 501 was endorsed in that case. *United States ex rel. Raven v. Ga. Cancer Specialists I*, 2020 U.S. Dist. LEXIS 143380, 2020 WL 548744, *8-9 (N.D. Ga. 2000)(referring to Judge Drake's analysis as "a very thorough analysis of the

21

Supreme Court's framework in [*Jaffee*] for analyzing when an evidentiary privilege pursuant to Federal Rule of Evidence 501 should be recognized").

Since 2002, the reasoning in *Folb* relied upon by Judge Drake has been followed by multiple federal courts throughout the country. *ACQIS, LLC v. EMC Corp.*, 2017 U.S. Dist. LEXIS 100856, *3 (D. Mass. 2017)("the Court sees no reason to depart from the conclusions of these district courts [including *Folb* and *Sheldone*] and finds that a federal mediation privilege applies to the privilege disputes raised by the instant letter directed to mediator"); *Savage & Assocs., P.C. v. K&L Gates LLP (In re Telligent, Inc.)*, 640 F.3d 53, 57 (2nd Cir. 2011)(citing *Folb* and other cases recognizing mediation privilege, as support for "protecting the integrity of alternative dispute resolution generally"); *Sampson v. Sch. Dist.*, 262 F.R.D. 469 (E.D. Pa. 2008)(while confidentiality decided on other grounds, the District Court states "[n]evertheless, we find persuasive the reasoning set forth by the court in [*Sheldone*] and by other courts that have adopted the federal mediation privilege [including Judge Drake's reasoning in *Hays* (RDM Sports)]; *In re Anonymous*, 283 F.3d 627, 636 (4th Cir. 2002)(recognizing reasoning in *Folb* as basis for strictly interpreting Fourth Circuit mediation confidentiality rule, Rule 33, and limiting exception to "manifest injustice"); *Adkins v. Morgan County,* 2018 U.S. Dist. LEXIS 240498 (E.D. Tenn. 2018)(denying motion for leave to subpoena mediator based on reasoning in *Folb*); *Williams v. L.A. Sheriff's Dep't*, 2020 LEXIS 250107, note 9

(C.D. Cal. 2020)("Courts in the Ninth Circuit have adopted a federal mediation privilege under Federal Rule of Evidence 501 [based on *Folb*]"); *Apple, Inc. v. Samsung Elecs. Co.*, 2014 U.S. Dist. LEXIS 2727, *27-28 (N.D. Cal. 2014) (Court had "repeatedly implored the parties to seek an amicable resolution of this [high stakes intellectual property] matter," and therefore denied 30(b)(6) deposition discovery into parties' extra-judicial mediation negotiations because to do so "would undoubtedly impede future settlement discussions," based on recognition of parties' expectations of confidentiality set forth in *Folb*); *Hand v. Walnut Valley Sailing Club*, 2011 U.S.Dist. LEXIS 80465, *13 (D. Kans. 2011)(dismissing Plaintiff's lawsuit as sanction for wilful violation of mediation confidentiality under Local District Court rule which "protect[s]the confidentiality of mediation communications ***to the maximum extent possible*** [emphasis added]," established pursuant to the Alternative Dispute Resolution Act, 28 U.S.C. § 652(d), and including authority expressly referencing *Folb* for explanation of the critical importance of confidentiality to effective mediation, particularly in court ordered mediation and noting that imposing ultimate sanction of dismissal was necessary because any lesser sanction would encourage others to conclude that the Court's confidentiality rules were essentially unenforceable).

Similarly, the Second Circuit reached the conclusion that mediation communications must be protected from disclosure in court directed mediation based

23

on its analysis of federal statutes and rules. While the mediation in this case was not conducted under the auspices of the District Court, the requirement for confidentiality in mediation of cases pending in federal courts is well-established under federal law as well.  As stated by the Second Circuit Court of Appeals in *Savage & Assocs., P.C. v. K&L Gates LLP (In re Telligent, Inc.)*, 640 F.3d 53, 57 (2nd Cir. 2011):

> "Confidentiality is an important feature of the mediation and other alternative dispute resolution processes. Promising participants confidentiality in these proceedings 'promotes the free flow of information that may result in the settlement of a dispute.'(cits. omitted). We vigorously enforce the confidentiality provisions of our own alternative dispute resolution [program ], . . . because we believe that confidentiality is 'essential' to [its] vitality and effectiveness.  *Lake Utopia Paper Ltd. V. Connelly Containers, Inc., 608 F.2d 928, 930 (2d Cir. 1979)*; *see also Calka v Kucker Kraus & Bruh*, 167 F.3d144, 146 (2d Cir. 1999) (per curiam); 2d Cir. app. D. R. 4 (prohibiting parties in CAMP conferences from advising 'unauthorized third parties of discussions or action taken at the conference')

> \*\*\*

> [The Uniform Mediation Act, the Administrative Dispute Resolution Act of 1996 ("ADRA 1996), 5 U.S.C. §§ 571 et seq. (which directs District Courts to make ADR available under local rules and to "provide for the confidentiality of the alternative dispute resolution processes . . . and prohibit disclosure of confidential dispute resolution communications")  and the Administrative Dispute Resolution Act of 1998 ("ADRA 1998"), 28 U.S.C. §§ 651 *et seq*.] recognize the importance of maintaining the confidentiality of mediation communications and provides for disclosure in only limited circumstances. For example, ADRA 1996, which applies to federal administrative agency alternative dispute resolution, prohibits disclosure of confidential mediation communications unless the party seeking disclosure demonstrates exceptional circumstances, such as when non-disclosure  would result in a manifest injustice, help establish a violation of law, or prevent harm to the public health or safety. 5 U.S.C. § 574(b)-(c). Relatedly, under the

UMA, the party seeking disclosure of confidential mediation communications must demonstrate that the evidence is not otherwise available and that the need for communications substantially outweighs the  interest in protecting confidentiality. UMA § 6(b)."

*Id.* at 58-59.

> **f)      The Only Evidence Submitted by Appellee and Considered by the District Court Was Privileged Mediation Communications**.

The only evidence presented by Defendant in support of the Motion to Enforce Settlement resulted from the mediation and consisted of e-mail communications exchanged between counsel during the mediation and parol evidence from Defendant's counsel and the mediator *as to their understandings taken from communications at the mediation*. See Motion to Enforce Settlement (Doc. 216 *et seq.*), including affidavit of Appellee's counsel, e-mails exchanged between the parties during the mediation, and, ultimately, testimony from the mediator regarding his opinion as to whether an agreement was reached at the mediation. Appropriately, under the terms of the Mediation Agreement, Appellant neither presented any evidence nor presented or elicited testimony from either the opposing parties or the Mediator, as to their communications during caucuses and exchanges of proposed settlement offers or their terms, *or their understanding of those offers and terms at the mediation*. Notably, there was no "written agreement made and executed by the parties," which is the only exception to confidentiality under the Mediation Agreement. Such other evidence presented by Appellee/Defendant therefore was

expressly confidential under the terms of the Mediation Agreement and should not have been disclosed to or considered by the District Court *for any purpose*, and most certainly not to attempt to establish a settlement agreement in the absence of the "written agreement made and executed by the parties" as contemplated by the Mediation Agreement.

If this question as to the exclusion of evidence related to the mediation other than "a written agreement made and executed by the parties a result of the mediation," as agreed to by the parties prior to the mediation, is determined in favor of Appellants on appeal, *that issue will be determinative of* the issue of whether the District Court should have considered any other evidence related to the mediation to conclude that *there was a settlement agreement* to be enforced by specific performance.

**B.    If the District Court did not err in its interpretation and application of the Mediation Agreement and Georgia and federal law as set forth above, the District Court nevertheless erred in granting Defendant's Emergency Motion to Enforce Settlement and Seek Sanctions (Doc. 244).**

As reflected by the fact of Appellee's counsel's telephone call the next day after the mediation ███████████████████████████████████████████ ███████████ there was a fundamental and material difference *at that time* between the parties' understandings resulting from the mediation, and Appellee's understanding as to the scope of the issues addressed at the mediation would be

totally unacceptable to any reasonable person under the circumstances. *Cox Broad. Corp. v. Nat'l Coll. Athletic Ass'n,* 250 Ga. 391, 395, 297 S.E.2d 733 (1982)(meeting of the minds is based on an objective test of whether the proposed understanding would be acceptable to a reasonable person). Appellants – once having been advised of the totally untenable and unreasonable interpretation proposed by Appellee's counsel in conflict with Appellants' clear understanding as to the scope of the issues addressed at the mediation – made it clear in communications through their counsel to the District Court that there had not been a meeting of the minds and that they were not willing to continue to negotiate with Appellee, were not willing to settle the case at that point, and were prepared to continue to proceed to trial as then scheduled. Appellee's later attempts[8] to reconstruct and salvage Appellee's desired settlement by "agreeing" for the first time four days later to Appellants' original understanding – after Appellants/Plaintiffs had rejected any further negotiations – did not resurrect, much less create, an enforceable settlement agreement **that never existed *at the time* of the mediation**, or at any time thereafter.

---

[8] Appellants/Plaintiffs were not willing to continue any further negotiations because they believed Appellee/Defendant's efforts to limit the scope of the relief to Appellants/Plaintiffs by changing the scope of the terms discussed at the mediation presaged an attempt to leverage the mediation discussions into a settlement agreement that would never have been acceptable to them or to any other reasonable person. At that point, trust was broken and Appellants/Plaintiffs were unwilling to continue negotiations of any kind, as was their right.

Moreover, even the record evidence available to the District Court establishes

██████████████████████████████████████████████████████

████████████████████████ *Cox Broad. Corp. v. Nat'l Coll. Athletic Ass'n,* 250 Ga. 391, 395, 297 S.E.2d 733 (1982)(no meeting of the minds or settlement when the parties had different understandings of the meaning of the same term). As reflected by the District Court's Order (Doc. 244), the District Court was informed by Appellee's counsel that the call made by Appellee's counsel was to ████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

███████████████████████████████ (Doc. 244, page 19)(emphasis added). Appellants' counsel's proposed e-mail to the Court was explicitly clear that the only issues not covered by the mediation and that were to proceed were █████████████

████████████ If there had been a contemporaneous agreement between Appellants' counsel and Appellee's counsel on that issue, then there would have been no reason for Appellee's counsel's telephone call to "clarify" that issue, and a simple e-mail from Appellee's counsel agreeing to adopt  or approve Appellants' proposed e-mail report to the Court, prepared promptly the morning after the mediation and prior to any further discussions with Appellee's counsel, would have been sufficient. Instead, Appellee's counsel did not agree to or approve the joint report in the form proposed by Appellants' counsel, but initiated an afterhours call the next day to

question Appellants' characterization that █████████████████████████ ██████████████████████████████████ as set forth in the e-mail Plaintiffs' counsel had proposed to send to the Court that day.[9] Clearly, it was Appellee's counsel's belief at that time that ██████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ██████████████████████████████. This contention did not merely seek clarification but fundamentally altered ████████████████████████████ ████████████████████████. *Bennett v. Novas*, 364 Ga.App. 364, 874 S.E.2d 871 (2022)("the fact that Progressive Insurance used the word "clarify" in its response letter is of no significance. As correctly noted by the trial court, "simply placing the word 'clarify' in a response to [the] plaintiff does not in and of itself have this effect.") Any failure of the parties to have a meeting of the minds ***on that*** ████████████████████████████████████████, was ***highly material*** ████ ████████████████████████████████████████████ ████████████████████████████████████████████

---

[9] Appellants' counsel's e-mail to the Court was sent out of sense of need to keep the Court informed as to the results of the mediation held the day before, due to the pending trial schedule. When Defendant's counsel failed to respond to repeated messages and calls to their office during business hours to seek approval to send it as a joint report, Plaintiff's counsel revised it to make it a report from Plaintiff's counsel only and sent it at the close of the business day, so that it would be sent to the District Court on the day following the mediation.

[REDACTED]. If that potentiality was realized, it would have meant that ***Appellants***, [REDACTED] [REDACTED] as a part of any settlement. Clearly, that was not Appellants' understanding of the scope of [REDACTED], nor would it have been the understanding of any other reasonable Plaintiff in agreeing [REDACTED] [REDACTED] [REDACTED] [REDACTED][10]

Appellants, having been informed on the day of the phone call from Appellee's counsel of the disagreement on this material term as proposed by Appellee during the mediation, immediately instructed their counsel to reject the any such proposed term as a counter-offer, [REDACTED] [REDACTED] and to discontinue any further negotiations.

---

[10] At the time of the mediation, the claims for sanctions had not been liquidated by the District Court and the claims themselves were $15,963.50. (Doc. 180, page 16). [REDACTED] (Doc. 216-5).

**C.      Even if the Mediation Agreement was Properly Construed by the District Court, Appellants Concerns Regarding Waiver Were Valid And Appellants Should Be Permitted to Present Evidence, Call Witnesses and Cross-Examine the Mediator, Regarding The Understandings of the Parties and To Present Further Evidence From the Mediation Participants on Remand.**

Even if the Mediation Agreement was properly construed by this Court, Appellants respectfully submit that their concerns regarding waiver were valid and that Appellants should be permitted on remand to present evidence in opposition to the parol evidence presented by Defendant.[11] As Appellants consistently maintained below, based on *RegScan v. Bureau of National Affairs*, 2012 U.S. Dist. LEXIS 101273, *15-17, 2012 WL 2994075 (E.D.Va. 2012) (objections to disclosure to the Court of mediation communications waived when objecting party submitted own evidence of mediation communications to the Court on the issue of whether a settlement agreement existed and should be enforced), in order to preserve their objection to the use of any confidential information from the mediation, they could

---

[11] To attempt to avoid prejudice in defending the Motion to Enforce Settlement, as well as enforce the confidentiality provisions of the Mediation Agreement, Appellants' first sought review by this Court of the issue of confidentiality prior to the District Court's ruling that there was a settlement agreement. *Weissman v. Cheokas*, Case No. 23-12180-J (11th Cir.  July 3, 2023)(Petition for Issuance of Writ of Mandamus denied July 10, 2023). As such, Appellants have consistently sought timely review of the issue of confidentiality and should not be prejudiced by their inability to secure consideration of this issue prior the District Court's ruling. Appellants were in the position of either waiving the confidentiality provisions of the Mediation, or presenting their own testimony and evidence as to the events at the Mediation that demonstrate that there was not a "meeting of the minds" at the mediation.

not respond with their own parol evidence in the form of testimony from Appellants (or their counsel) present at the mediation as to their understanding any possible settlement agreement at the mediation. Appellants/Plaintiffs also could not cross-examine Appellee's affiant, Mr. Kennedy, cross-examine his client, Mr. Cheokas, or others present at the mediation. Likewise, when the mediator testified at the hearing, Appellants' counsel could not cross-examine the mediator as to the events and understandings at the mediation for fear of eliciting the very confidential testimony to which Appellants objected. In the absence of such parol evidence, the District Court was presented only a one-sided version of the parties' respective understandings at the mediation based only on communications from the perspective of the Defendant, and, ultimately, the mediator. (Doc. 244, pages 11 through 16). It is respectfully submitted that if such parol evidence had been presented by Appellants, then it would have been clear that there was ___**not**___ "a meeting of the minds ___**at the same time [meaning the time of the mediation]**___, upon the same subject matter and in the same sense," as required by *Cox Broad. Corp. v. Nat'l Coll. Athletic Ass'n*, 250 Ga. 391, 395, 297 S.E.2d 733, 737 (1982)(emphasis added).

## II.    Appellants' Counsel Should Not Be Sanctioned for Seeking Enforcement and Interpretation of the Mediation Agreement and Declining to Present Confidential Evidence That May Have Resulted in Irreparable Prejudice to His Client

On August 15, 2023, Appellee's counsel filed a Motion for Attorneys' Fees (Doc. 243) pursuant to the District Court's Order granting sanctions (Doc. 224),

32

claiming $81,033.85 in fees and litigation expenses against the undersigned counsel only, which Appellee claims were incurred preparing for trial after the mediation, and which Appellee's counsel contends would not have been necessary had the case been settled as a result of the mediation. Appellant has not yet been required to file a Response to the Motion for Attorneys' Fees because the District Court stayed any further proceedings pending this appeal. (Doc. 254).

Nevertheless, the issue of whether the District Court abused its discretion by entering the Order sanctioning Appellant's counsel, regardless of the amount ultimately allowed, is also presented by this appeal.[12] Appellee filed his Emergency Motion to Enforce Settlement, including a request for entry of sanctions, on June 22, 2022 (Doc. 216). The request for sanctions was tacked on to the end of the motion and stated that ███████████████████████████████████████

███████████████ *Id.* at 19. Appellee cited the following as the basis for imposition of sanctions ████████████████████████████████████

███████████████████████████████████████████████████████

██████████ *Id.* at 20. The District Court based its sanctions order on the inherent powers of the District Court and 28 U.S.C. § 1927 (Doc. 244, page 23).

---

[12] If the District Court's Order is considered a final judgment, then review of prior orders may be permitted at this time. (See Eleventh Cir. Doc. 13 – Response to Jurisdictional Question). Additionally, even if only the Court's order on enforcement of a settlement is considered, this award of fees is integral to that order and it is respectfully submitted that this issue of sanctions should be considered at this time.

The District Court concluded that "Plaintiffs' counsel acted in bad faith when he repeatedly refused to provide evidence or substantive arguments against Defendant's Motion to Enforce (Doc. 216)." The District Court explained that Plaintiffs' counsel did so "without citing to any legal authority . . . while only pointing to the confidentiality provision of the Mediation Agreement." *Id.* at 25. ***This conduct occurred after the filing of the Emergency Motion to Enforce Settlement*** and ***therefore was not encompassed within Appellee's motion for sanctions*** and there was no prior notice of a claim for sanctions based on the failure to respond to or provide evidence in response to the Emergency Motion to Enforce.

A finding of bad faith against counsel to enter an award of sanctions requires a hearing. *Young Apts., Inc. v. Town of Jupiter*, 503 Fed. Appx. 711, 725 (11th Cir. 2013). While there was a hearing on the Emergency Motion to Enforce Settlement, that hearing did not include a hearing addressing bad faith in opposing that motion and, indeed, the District Court premised its finding of bad faith upon subsequent events in which counsel continued to decline further requests to respond to the motion. Hence, there was never a hearing during which the totality of the conduct resulting in the sanction was addressed. Indeed, the first notice counsel had that the totality of his conduct in declining the further requests was at issue was the Court's order sanctioning such conduct. For these reasons alone, the award of sanctions should be reversed and remanded.

More fundamentally, however, regardless of whether a hearing was conducted or not, the sanctions award calls into question counsel's conduct in declining to present evidence in opposition to the Emergency Motion to Enforce Settlement and whether, from an objective viewpoint, that decision constituted bad faith. Counsel contends that from an objective viewpoint, the decision not to present evidence in opposition to the Emergency Motion to Enforce Settlement was based upon existing Georgia contract and mediation law.

As noted by the District Court, this Court reviews an award of sanctions for abuse of discretion. Abuse of discretion may result from an error of law. In this case, Appellants/Defendants contend that the District Court erred as to the law in permitting, and, indeed, requiring evidence of confidential mediation communications. Alternatively, the District Court also erred in awarding sanctions because counsel's conduct, even if Appellants/Plaintiffs decision not to present parol evidence was in error, was based upon reasonable arguments based on existing law, or the extension of existing law.

Appellants filed their Emergency Motion to Enforce Confidentiality Provisions of Mediation Agreement on June 21, 2023. Appellee filed his Emergency Motion to Enforce Settlement on June 22, 2023. The District Court held a hearing on both motions on June 30, 2023. (See transcript, Doc. 258). Appellant's counsel argued their Emergency Motion to Enforce Confidentiality Provisions of the

Mediation Agreement (Doc. 215) first, but the District Court orally denied that motion at the hearing and next heard Defendant's Emergency Motion to Enforce Settlement. (Doc. 285 at 92). Appellants' counsel informed the District Court at the Friday, June 30, 2023 hearing on the Emergency Motion that he intended to seek appropriate review in this Court of the District Court's denial of his Motion to Enforce Confidentiality Provisions of the Mediation Agreement pursuant to Eleventh Circuit authority in *In re Secretary of Florida Department of Corrections*, 2020 U.S. App. LEXIS 9894 (11th Cir. 2020) and *Schiavo v. Schiavo*, 403 F.3d 1223 (11thCir. 2005). (Doc. 258 at 11, 39) Appellant's counsel objected to Appellee's motion (which included confidential mediation matters) being heard. *Id.* at 81 and 91). The District Court overruled the objection, but granted Appellees a continuing objection. *Id.* Appellants' counsel also informed the Court that he therefore was required to respectfully decline to present evidence in opposition to the motion to Enforce Settlement in order to avoid waiver of the right to assert the confidentiality of the mediation proceedings. (Doc. 258 at 37-39, 69 and *RegScan v. Bureau of National Affairs*, 2012 U.S. Dist. LEXIS 101273, *15-17, 2012 WL 2994075 (E.D.Va. 2012) (objections to disclosure to the Court of mediation communications waived when objecting party submitted own evidence of mediation communications to the Court on the issue of whether a settlement agreement existed and should be enforced). The District Court then heard Defendant/Appellee's argument and

evidence, including testimony of the mediator Mark Dehler. (Doc. 285 at 114). Appellants' counsel rose to cross-examine Mr. Dehler, requesting leave to do so without waiving Appellants' objections to disclosure of any matters related to the mediation, to which the Court responded "you can't have it both ways there, Mr. Andersen" (*Id.* at 139), and Appellants' counsel then stated that he would not ask any questions of the mediator. (*Id.*).

On Monday, July 3, 2023, the first business day following the Friday, June 30, 2023 hearing, the District Court entered its Order (Doc. 228), that "Plaintiffs' Counsel, Mr. Andersen, is ORDERED to file a notice by 5 PM EST on Monday, July 3, 2023, to inform the Court and Defense Counsel as to whether he would like an opportunity to present his arguments and any evidence as to Defendant's Motion to Enforce (Doc. 216). If so, the hearing is set for **Wednesday, July 5, 2023,** at **11 AM** in the **Albany Courthouse**. On the other hand, if Mr. Andersen informs the Court that no additional hearing is necessary, ***then the evidence on Defendant's Motion to Enforce will be closed***." *Id.* at 6. (bold emphasis in original and italicized bold emphasis added).

Plaintiffs' Counsel thereafter on that same day promptly filed in the District Court their Motion to Stay Proceedings Pending Appeal (Doc. 232), and Report Pursuant to Court Order (Doc. 234), reiterating their position that submitting evidence in opposition to the Emergency Motion to Enforce Settlement would

"[prejudice] their position that [the District] Court erred in its ruling at the hearing on June 30, 2023, denying Plaintiffs' Motion to Enforce Mediation Agreement, . . ." *Id.* at 1. Plaintiffs requested that the District Court "stay further proceedings in this case on Plaintiffs' claims against Defendant, including but not limited to Defendant's Motion to Enforce Settlement (Doc. 216), including its motion for sanctions, pending the consideration of the Petition for Writ of [Mandamus] by the Eleventh Circuit Court of Appeals." *Id.* at 2. Plaintiffs' Counsel then also filed a Petition for Writ of Mandamus on Monday, July 3, 2023, seeking review of the District Court's oral ruling related to enforcement and interpretation of the confidentiality provisions of the Mediation Agreement. (*Weissman v. Cheokas*, Case No. 23-12180-J (11th Cir. July 3, 2023).

On July 5, 2023, the District Court entered its order denying the Motion to Stay (Doc. 238). The District Court denied the stay on the grounds, *inter alia*, that "Plaintiffs' failed to show any actual injury if the settlement agreement were enforced (Doc. 228), . . . failed to produce evidence as to how they would be irreparably injured absent a stay, . . . Defendant makes a compelling argument that the stay will substantially injure him because the stay would delay the Court's ruling of his Motion to Enforce the Settlement Agreement (216), which would put him in an 'unnecessary procedural purgatory,' given that Defendant believes a settlement had been reached at the mediation, . . . [and] Plaintiff once again does not offer any

argument [for why a stay is favored by the public interest], but Defendant contends that's the law generally favors compromises because they are often a speedy and efficient resolution of a long, complex, and expensive litigation." *Id.* at 6-7.[13]

Appellants then filed a Motion to Stay in this Court on July 6, 2023 (Case No. 23-12180-J, Doc. 7). Appellants also filed in the District Court a Motion to Continue (Doc. 239 and 239-1) the trial from the previously postponed July 17, 2023 trial date based upon the proceedings related to the pending settlement related motions, which the District Court heard during a telephonic hearing on July 7, 2023. Appellee did not oppose the Motion to Continue at the telephonic hearing, and the District Court postponed the then set trial date of July 17, 2023, to a date to be determined by the Court. The District Court stated that it was aware of the pending Petition for Writ of Mandamus and may "wait to hear from the Eleventh Circuit" before entering a ruling on Appellant's Motion to Enforce Settlement.  Appellants thereafter filed their Supplement to the Motion to Stay in this Court (Case No. 23-12180-J, Doc. 8) reporting the postponement of the trial date , but still urging a stay because that the

---

[13] The District Court also stated in support of the Order denying the stay that "Plaintiffs are not being asked to present evidence as to any actual confidential communication and information that were exchanged during the mediation." *Id.* at page 7, n.4. Plaintiffs had clearly informed the Court that in order to fully address why there was no "meeting of the minds" at the mediation, Plaintiffs would have to present evidence in the form of testimony from the participants at the mediation as well as any available documents. (Doc. 258 at 10).

Motion to Enforce Settlement "also may be granted without any further response by Petitioners to Respondent's Motion to Enforce Settlement." *Id.* at 4. This Court thereafter denied the Petition for Writ of Mandamus on July 10, 2023. (Case No. 23-12180-J, Doc. 9-1, at page 2)(stating that Petition for Writ of Mandamus is a "drastic and extraordinary remedy reserved for really extraordinary cases . . ." and that Petitioners had not met the "burden of showing that the petitioner has no other avenue for relief and that the right to relief is clear and indisputable," *citing Mallard v. United States District Court*, 490 U.S. 296, 309 (1989)).

The evidence having been closed as of July 5, 2023 pursuant to the Court's Order of July 3, 2023 (Doc. 216), the District Court having denied Plaintiffs/Appellants' Motion to Stay (Doc. 232), the Petition for Writ of Mandamus having been denied by this Court, and without any further proceedings, the District Court entered its Order on July 25, 2023, granting Appellee's Emergency Motion to Enforce Settlement ***and also entering an award of sanctions against counsel under the inherent powers of the District Court and 28 U.S.C. § 1927. (Doc. 244)***. The District Court noted that a finding of bad faith is required for an award of sanctions against counsel under either the inherent powers of the District Court or 28 U.S.C. § 1927, and that whether bad faith was present is based on an objective standard. *Id.* at 24-25, citing *Peterson v. BMI Refractories*, 124 F.3d 1386, 1396 (11th Cir. 1997); and *Schwartz v. Million Air, Inc.*, 341 F.3d 1220, 1225 (11th Cir. 2003*); see also*

40

*Barnes v. Dalton*, 158 F.3d 1212, 1214 (11ᵗʰ Cir. 1998); *Thomas v. Tenneco Packaging Co.*, 293 F.3d 1306, 132 (11ᵗʰ Cir. 2002). The District Court also concluded that an award of sanctions would be reviewed by this Court based upon an abuse of discretion standard. *Id.* at 24-25, *citing Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1179 (11ᵗʰ Cir. 2005).

The District Court concluded that "Plaintiffs' counsel acted in bad faith when he repeatedly refused to provide evidence or substantive arguments against Defendant's Motion to Enforce (Doc. 216)." The District Court explained that Plaintiffs' counsel did so "without citing to any legal authority . . . while only pointing to the confidentiality provision of the Mediation Agreement." *Id.* at 25.

The argument at the hearing and the response repeatedly emphasized the contractual requirement for strict confidentiality in the mediation process. (Doc. 258 at 16). In addition, the specific terms of the Mediation Agreement were clear and were addressed at length. (*Id.* at 6-8). It is a fundamental and well recognized tenet of Georgia contract law that a contract is to be construed and enforced according to its terms. Beyond those principles, there is no other basis required for enforcing the confidentiality provisions of the Mediation Agreement. While the District Court ultimately disagreed with Appellants/Plaintiffs' counsel's interpretation and application of the contract, there is no question that the contract terms themselves at the very least supported Appellants' argument, as espoused by their counsel. If the

41

position itself was not frivolous, then by definition, it was not unreasonable or vexatious to present the argument to the District Court and to continue to assert the argument in this Court, first by seeking the Writ of Certiorari, and now by asserting the argument on this appeal. If not, then counsel is not only acting reasonably in asserting the argument, but was obligated to do so and to preserve the argument on behalf of the client to avoid irreparable prejudice by not disclosing confidential information. Moreover, and, most importantly, even if this Court affirms the District Court's interpretation, if Appellant's ***same argument on this appeal*** is not legally frivolous and factually baseless, then the District Court erred in finding that asserting the argument and preserving it for appeal by not waiving the confidentiality was "unreasonable and vexatious." That is all that has been done in this case, just like others in which the parties argue conflicting positions – objectively and in good faith. Just as recently stated by the Magistrate Judge Walker in *Brown v. Life Univ., Inc.*, 2023 U.S.Dist. LEXIS 215286. *6-7 (N.D. Ga. 2023), a motion for sanctions is not appropriate simply because a party has the "temerity to oppose a motion" and "simply responding to a motion with unsuccessful arguments is not 'particularly egregious' and does not 'needlessly obstruct the litigation.' See Amlong*, 500 F.3d at 1242." In this case Appellant's counsel responded to a motion to enforce a disputed settlement based on confidential mediation communications. Even if

unsuccessful, the consistent and reasoned response to the motion was not "egregious" and did not "needlessly obstruct the litigation."

"A court should be cautious in exerting its inherent power and must comply with the mandates of due process, both in determining that the requisite bad faith exists and in assessing fees." *Byrne v. Nezhat*, 261 F.3d 1075, 1106 (11th Cir. 2001)(citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991).

28 U.S.C. § 1927 is penal in nature and must be strictly construed. *Macort v. Prem., Inc.* 208 Fed. Appx. 781, 786 (11th Cir. 2006). (*citing Peterson v. BMI Refactories*, 124 F.3d 1386, 1296 (11th Cir. 1997). "To justify an award of attorneys' fees under section 1927, a court must find that a party has 'unreasonably and vexatiously' multiplied the proceedings in a case." *Mackenzie v. City of Rockledge*, 920 F.2d 1554, 1560, (11th Cir. 1991[quoting 28 U.S.C. § 1927). For sanctions under section 1927 to be appropriate, something more than a lack of merit is required. The statute was designed to sanction attorneys who willfully abuse the judicial process by conduct tantamount to bad faith." *Schwartz v. Million Air, Inc.,* 321 F.3d, 1220, 1225 (11th Cir. 2003)(citation and internal quotation marks omitted)." *Id.* at *18

"[A] district court's authority to issue sanctions for attorney misconduct unde § 1927 is either broader than or equally as broad as the district court's authority to issue a sanctions order under inherent powers." [*Amlong & Amlong, P.A. v. Dennys,*

*Inc.*, 500 F.3d 1230, 1239 (11th Cir. 2007)] Thus, it makes sense to consider sanctions under Section 1927 before addressing whether sanctions are merited under the Court's inherent power.  See *Amlong & Amlong, P.A. v. Dennys, Inc.*, 500 F.3d 1230, 1241(11th Cir. 2007).

"Sanctions imposed under § 1927 must bear a financial nexus to the excess proceedings [and] may no exceed the costs, expenses, and attorneys' fees reasonably incurred because of [the sanctionable] conduct." *Norelus v. Denny's Inc.*, 628 F.3d 1270, 1297 (11th Cir. 2010), and therefore sanctions should be limited to fees and expenses incurred in responding to the sanctionable conduct.

"The plain statutory language of section 1927 makes clear that this section is not a 'catch-all' provision for sanctioning objectionable conduct by counsel. *Peterson,* 124 F.3d at 1396. To justify an award of sanctions pursuant to section 1927, an attorney must engage in unreasonable and vexatious conduct; this conduct must multiply the proceedings; and the amount of the sanction cannot exceed the costs occasioned by the objectionable conduct. *McMahan v. Toto*, 256 F.3d 1120, 1128 (11th Cir. 2001), amend on reh'g, 311 F.3d 1077 (11th Cir. 2002), cert denied sub nom. *Nemesis Veritas, L.P. v. Toto*, 156 L.Ed.2d 129, 123 S.Ct. 2273 (2003). For sanctions under section 1927 to be appropriate, something more than a lack of merit is required. *Id.* at 1129. The statute was designed to sanction attorneys who "willfully abuse the judicial process by conduct tantamount to bad faith." *Malautea*

*v. Suzuki Motor Co., Ltd.* 987 F.2d 1536, 1544 (11th Cir. 1993)(quoting *Avirgan v. Hull*, 932 F.2d 1572, 1582 (11th Cir. 1991)." *Million Air* at 1225. *See also Patel v. McCall*, 200 Fed. Appx. 841 (11th Cir. 2006)(citing *Million Air* - section 1927 was "'designed to sanction attorneys who willfully abuse the judicial process by conduct tantamount to bad faith,' but not by conduct constituting "mere negligence.'"

"A determination of bad faith is warranted where an attorney knowingly and recklessly pursues a frivolous claim or engages in litigation tactics that needlessly obstruct the litigation of non-frivolous claims. *Cf. Thomas v. Tenneco Packaging Co., Inc.*, 293 F.3d 13016. 1320 (11th Cir. 2002).(defining bad faith under the courts' inherent power to award sanctions)." *Million Air* at 1225-26.

The determination of whether a claim or defense is frivolous is an objective one, "[h]ence courts determine whether a reasonable attorney in like circumstances could believe his actions were factually and legally justified. *Kaplan v. DaimlerChrysler, A.G.,* 331 F.3d 1251, 1255 (11th Cir. 2003). . . " *Diaz v. Marblehead Corp.,* 643 Fed. Appx 916 (11th Cir. 2016). In this case, at a minimum, the arguments set forth in the District Court based on the Mediation Agreement, Georgia law and other applicable federal law were reasonable arguments that the District Court might have been expected to accept and, even if the District Court did not accept Appellants' counsel's interpretation of the Mediation Agreement and applicable law, there is no basis for finding counsel's conduct was not reasonably

based upon the Mediation Agreement and intended solely to preserve his client's rights under that Agreement to strictly enforce its confidentiality provisions, such that it was in bad faith or unreasonable and vexatious.

For the foregoing reasons, Appellant respectfully requests that the District Court Order in this case be reversed and that this case be remanded for further proceedings consistent with the rulings to be made by this Court on this issue.

**III.  The District Court's Orders Practically and Functionally Terminated All Claims, Except Claims for Attorney's Fees For Sanctions, By Requiring Appellants to Execute A Release of All of Appellants' Claims, Within Seven (7) Days of the July 25, 2023 Order, and Therefore May Be Subject Appellate Review Under 28 U.S.C. § 1291.**

The determination of whether an appeal is proper under 28 U.S.C. § 1291 does not depend on the "form of the District Court's orders," but takes "a functional approach to finality." *Martinez v. Carnival Corp*., 744 F.3d 1240, 1243-44 (11th Cir. 2014).

The present lawsuit has now been pending **more than** six years. The original Complaint *in this case* set forth eleven counts *against Appellee* **under both federal and state law**. Appellee, over that time, has filed two Motions to Dismiss (Doc. 11, 26), and a Motion for Summary Judgment (Doc. 130) that  ultimately resulted in dismissal or summary judgment as to all of those counts other than **the state law claims for** "fraud, civil conspiracy and conversion" counts (Doc. 22, 31 and 190, page 72). Based on these rulings, Appellants/Plaintiffs filed their Appellant's Motion

for Leave to File a Second Amended Complaint asserting California or Illinois law as the applicable substantive law as to those remaining **state law** claims based on fraud, and to dismiss their conversion claims. (Doc.  198, 221)**.**

Appellants/Plaintiffs also sought an order that claims for punitive damages could be recovered for fraud**, even though** the original Complaint, while **expressly referring to claims for punitive damages in the respective _fraud_ counts**, inadvertently omitted a reference to punitive damages *in the prayer for relief*. (Doc.203, 221).

Punitive damages were expressly pled in the preamble and the substantive allegations of each count of Plaintiffs' original Complaint and Amended Complaint remaining for trial, but punitive damages are not expressly included in the prayer for relief in those pleadings. Nevertheless, out of an abundance of caution, Plaintiffs sought leave to amend both the Amended Complaint (Doc. 25) and the proposed Second Amended Complaint (Doc. 198-1), if allowed, to add the following to their prayer for relief:

> That Plaintiffs be awarded punitive damages against Defendant in an amount sufficient to deter Defendant from similar conduct in the future.

Both the Amended Complaint (Doc. 25) and the proposed Second Amended Complaint (Doc. 198 -1, page 2) state the following:

> COME NOW        Plaintiffs . . . and file this [Amended Complaint or proposed Second Amended Complaint] for injunctive relief and *for direct,*

47

***consequential and punitive damages*** against Michael Cheokas ("Cheokas"), . . .:

(Doc. No. 25, page 1, Doc. No. 198-1, page 2)(emphasis added).

Additionally, ***each of the remaining substantive counts for trial*** ("First Cause of Action – Fraud Committed by Williams, SFA and Cheokas," "Second Cause of Action – Fraud as to Ownership of Converted Asset of Weatherly Aircraft Company" and "Fifth Cause of Action – Civil Conspiracy") ***expressly allege*** the following:

> The fraudulent conduct of [Defendant Cheokas along with others] was done intentionally, maliciously, wantonly, and with callous disregard for the consequences of these actions on Weissman . . . ***entitling [Weissman]*** as the assignee of Remington Partners in the Remington/Weatherly Aircraft Company Security Agreement, and as owner of the Foreclosed Assets following the [Weissman California] Foreclosure Sale on September 29, 2008, ***to punitive damages against Defendants [Cheokas, and others].***

Amended Complaint (Doc. No. 25) and proposed Second Amended Complaint (Doc. 198-1), ¶¶ 57, 65 and 84 (emphasis added). The District Court denied both of those motions for leave to amend. (Doc. 221) Appellants/Plaintiffs are entitled **to** appellate review of both of these **issues** if this appeal is determined to be an appeal under 28 U.S.C. § 1291. *Mickles v. Country Club, Inc*., 887 F.3d 1270, 1278 (11th Cir. 2018), *citing Barfield v. Brierton*, 883 F.2d 923, 931 (11th Cir. 1989).

Appellants/Paintiffs did not seek to amend any factual allegations, but only to amend the complaint to leave only the specific counts remaining for trial and the law applicable to the remaining counts, including applicable punitive damage claims.

48

**1) Allowing the Present Amendment Also Should Be Permitted As Plaintiffs' Amended Pleading of the Applicable Law May Affect Further Proceedings If Raised For Any Reason At Trial or On Any Later Appeal**

In the absence of this amendment, it can be expected that Appellee/Defendant may continue to raise the issue of the applicability of Georgia law to the remaining claims, if not at trial, then on any possible appeal. Accordingly, expressly amending the pleadings at this stage prior to the trial is important to Plaintiffs to avoid having to address this choice of laws argument again in the future. Since the plaintiff is the master of its lawsuit, there is no reason to conclude that addressing this issue at this time is inappropriate, particularly if deemed advisable by Appellees/Plaintiffs in the further prosecution of their case, and, because the substantive law is identical, the proposed amendment will not prejudice Defendant in the defense of these substantive claims or require any further proceedings. *Taylor Morrison Servs v. HDI-Gerling Am. Ins. Co.*, 293 Ga. 456, 466, 746 S.E.2d 587, 594 (2013).

**2) Fed. R. Civ. P. 15(a) Is Liberally Construed in Favor of Allowing Amendments and the Proposed Amendments Are Not Prejudicial to Defendant**.

Fed. R. Civ.P. 15(a) provides that "the court should freely give leave [to amend before trial pursuant to Fed.R.. Civ. P. 15(a)(2)] when justice so requires." *Forman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222, 226 (1962). The standard of review is abuse of discretion, but, as this Court has stated "[u]nless there is a substantial reason to deny leave to amend, the discretion of the district court is not broad enough to permit denial [cit. omitted]" and that "where a party seeks leave to amend

before the deadline to amend has elapsed, the Court must identify a substantial reason to justify denying the motion [cit. omitted]"  and "[citing *Forman v. Davis* above], [s]ubstantial reasons include undue delay, bad faith, or dilatory motive, among others." *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1319 (11th Cir. 1999) (quoting *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981)).

**a)** **The Proposed Amendment to Specify California and Illinois Law As the Basis for Plaintiffs' Claims Is Not Asserted in Bad Faith or for a Dilatory Motive, But to Correctly Apply the Applicable Choice of Laws under the Georgia Choice of Laws Rules**

The timing of an amendment to specify the applicable law following denial of a dispositive motion on those claims when necessary to promote the further prosecution of those claims on the merits, particularly at trial or on any subsequent appeal, is appropriate and therefore it can hardly be said that such an amendment is in bad faith. Moreover, in this case, the amendment to specify the correct law applicable under Georgia choice of laws rules is not dilatory. *Taylor Morrison Servs v. HDI-Gerling Am. Ins. Co*., 293 Ga. 456, 466, 746 S.E.2d 587, 594 (2013).

**b)** **The Amendment to Specify the Applicable Law Is Not Prejudicial and Will Not Result in Undue Delay Because the Amendment Does Not Add Any New Claims and the Substantive Law Sought By Amending the Complaint to Expressly Base Plaintiffs' Fraud Claims and Civil Conspiracy Claim on California and Illinois Law is the Same As Georgia Law**

The proposed amendment to specify California and Illinois law as the basis for Plaintiffs fraud claims and civil conspiracy claims will not result in any delay as the trial of this case has been postponed pending the disposition of this appeal. Defendant also

50

will not in any way be prejudiced in the defense of the fraud claims because any applicable substantive fraud defenses are identical regardless of whether the substantive claims are based on California, Illinois or Georgia law. None of the factual issues in this case are in any way impacted and no discovery of any kind is needed to apply the same set of facts to the identical legal standards.

Plaintiffs also seek leave to withdraw their conversion claim (Third Cause of Action). Proposed Second Amended Complaint, page 33, ¶¶ 66-70)(Doc. 198-1). There can be no prejudice to the Defendant from an amendment dismissing a claim prior to trial.

Plaintiffs also seek leave to delete from the Second Amended Complaint Count Eleven based on O.C.G.A. § 13-6-11.

## <u>CONCLUSION</u>

For the foregoing reasons, this case should be reversed and remanded for trial and further proceedings consistent with this Court's rulings on the issues presented by this appeal.


Respectfully submitted:


/s/Donald R. Andersen
Donald R. Andersen
Ga. Bar No. 016125
andersen@skinnerlawgroup.com
**SKINNER LAW GROUP**
3340 Peachtree Rd, Suite 1800
Atlanta, GA  30326
Telephone: (404) 291-3429
Attorneys for Appellant

## CERTIFICATE OF COMPLIANCE

1. This Brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains no more than 12,779 words, excluding the parts of the Brief exempted by Fed. R. App. P. 32(a)(7)(B)(i) and 32(f) and 11th Cir. R. 32-4.

2. This Brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because counsel prepared it using plain, Roman Style, with exceptions for case names and emphasis, and using Times New Roman 14-point type, which is proportionately spaced font, including serifs.

Respectfully submitted this 29th day of December, 2023.

/s/Donald R. Andersen
Donald R. Andersen
Ga. Bar No. 016125
andersen@skinnerlawgroup.com
**SKINNER LAW GROUP**
3340 Peachtree Rd, Suite 1800
Atlanta, GA  30326
Telephone: (404) 291-3429
Attorneys for Appellant

## <u>CERTIFICATE OF SERVICE</u>

In accordance with F. R. App. P. 25(a)(2)(B), I hereby certify that I have this day served the foregoing document via Electronic Mail generated by the Court's electronic filing system (CM/ECF) with Notice of Docket Activity addressed to all parties as follows:

**John F. Kennedy, Esquire**
**James F. Banter, Esq.**
James, Bates, Brannan, Groover, LLP
Attorneys for Respondent
231 Riverside Dr.
Macon, Georgia 31201

**jkennedy@jamesbatesllp.com**
**jbanter@jamesbatesllp.com**

This 29th day of December, 2023.


Respectfully submitted:


/s/Donald R. Andersen
Donald R. Andersen
Ga. Bar No. 016125
andersen@skinnerlawgroup.com
**SKINNER LAW GROUP**
3340 Peachtree Rd, Suite 1800
Atlanta, GA  30326
Telephone: (404) 291-3429
Attorneys for Appellant